

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Geo. W. Cox
State Health Officer
Austin, Texas

Dear Sir:

Opinion No. O-615
Re: An interpretation of the quarantine laws
set forth therein, and definition of the
powers of local health officers in enforce-
ment thereof.

We are in receipt of your request for an opin-
ion on the following questions:

"Art. 782 of the Texas Penal Code (1925)
provides that anyone violating any provisions
of the Sanitary Code, other than those relat-
ing to Vital Statistics, shall be fined not
less than ten nor more than one thousand dol-
lars.

"Art. 1. Sec. 28 of the Texas Constitution
provides 'No power of suspending laws in this
State shall be exercised except by the Legisla-
ture'.

"My personal attorney informs me that he
has never seen a case reported where a person
has been convicted of a violation of Art. 782.
(1) Is/are such case or cases of record?
(2) Would above State Const. Art. permit such
conviction, or have any bearing whatsoever on
case in point--complaint for violation of quar-
antine regulations?

"Art. 4477, Rule 7 of the Sanitary Code pro-
vides: Health authority shall placard all
houses where contagious disease exists (in the
case in point S.P.) within his jurisdiction,

ply placing a yellow flag or card not less
than eight inches wide and twelve inches long
with the words 'Contagious Disease'; and the
quarantine regulations printed thereon, in a
conspicuous place on said house.

"(3) Would the placing, as above, a white
card with following printed thereon meet re-
quirements? 'Quarantine. Contagious Disease.
These premises are hereby placed under quaran-
tine in accordance with and subject to the
provisions of the Sanitary Code of the State
of Texas. Penalty provided by law. By order
of County Health Officer.' If this does not
meet requirements please give full information.

"Rule 5 of Sanitary Code modified quaran-
tine (under this is S.P.) prohibits entrance
or exit from the patient's room or house ex-
cept certain members of the family under rules
prescribed by the health authority.

"(4) Does that mean the Health Officer may
prohibit any member or all members of the fam-
ily from leaving the house or premises, if in
his judgment such permit to leave might jeo-
pardize health of others?

"Art. 4440, Revised Civil Statutes of Texas,
provides for a county quarantine where the
county shall furnish medicines, provisions and
necessities and medical attention at county ex-
pense.

"(5) Does this apply to single house quar-
antine, or does it apply only when, as the law
states, the Commissioners' Court may deem such
quarantine for the best interest of Public
Health, etc.? If it applies to the individual
house quarantine, does it mean such to apply
in all cases, or only where such help may be
asked by family quarantined? If it applies to
individual house, as above, is it obligatory
on part of Health Officer to report all such
quarantines to the County Judge, or other mem-

ber of the Commissioners' Court, and ask that
such official see that above conditions are
met, family cared for as above?  And if such
is meaning is the quarantine affected (valid-
ity I mean) if county authorities do not go
see what is needed?

"Please let me have your ruling on the Ar-
ticles, and (6) your definition as to powers
of local health officers in the enforcement of
quarantine laws for the protection and health
of the people."

Article 782, Vernon's Annotated Criminal Stat-
utes, reads as follows:

"Whoever shall violate any provision of the
Sanitary Code of this State, other than those
relating to vital statistics, shall be fined
not less than ten nor more than one thousand
dollars."

Article 781a, id., provides:

"That any person, who for himself or as an
officer, agent, or employee of any other person
or of any corporation or partnership, (a) shall
inter, cremate, or otherwise finally dispose of
the dead body of a human being, or permit the
same to be done, or shall remove said body from
the primary registration district in which the
death occurred or the body was found, without
the authority of a burial or removal permit is-
sued by the local registrar of the district in
which the death occurred or in which the body
was found; or (b) shall refuse or fail to fur-
nish correctly any information in his possession
or shall furnish false information affecting any
certificate or record, required by this Act; or
(c) shall willfully alter, otherwise than is
provided by Section 18 of this Act[1], or shall
falsify any certificate of birth or death, or
any record established by this Act; or (d) being
required by this Act to fill out a certificate
of birth or death and file the same with the

local registrar, or deliver it, upon request,
to any person charged with the duty of filing
the same, shall fail, neglect, or refuse to
perform such duty in the manner required by
this Act; or (e) being a local registrar, dep-
uty registrar, or subregistrar, shall fail,
neglect, or refuse to perform his duty as re-
quired by this Act and by the instructions,
and direction of the state registrar thereunder,
shall be deemed guilty of a misdemeanor and up-
on conviction thereof shall for the first of-
fense be fined not less than five dollars ($5.)
nor more than fifty dollars ($50.), and for
each subsequent offense not less than ten dol-
lars ($10.) nor more than one hundred dollars
($100.), or be imprisoned in the county jail
not more than sixty days, or be both fined and
imprisoned."

In answer to your first question, we advise that
after an extended search through the authorities, espec-
ially Vernon's Annotated Criminal and Civil Statutes and
the Texas Digest, we have failed to find any reported
case involving a conviction under Article 782, supra,
for a violation of any provision of the Sanitary Code of
Texas, as enacted in Article 4477, Revised Civil Statutes,
1925.

Section 28 of Article 1 of the Texas Constitution
provides:

"No power of suspending laws in this State
shall be exercised except by the Legislature."

Texas Jurisprudence comments upon this section
as follows in Vol. 9, p. 500:

"Power to suspend the operation of a law may
not be exercised except by the Legislature. Ac-
cordingly, it is held that the Legislature may
not confer authority to suspend a general law
of the state upon a municipality or the voters
of a political subdivision."

SAN ANTONIO and A.P. RY. CO. vs. LESTER, 89 S.W.
752;

BROWN CRACKER & CANDY CO. vs. CITY OF DALLAS,
137 S.W. 342;
BAKER vs. COMAN, 198 S.W. 141;
BURTON vs. DUPREE, 46 S.W. 272;
EX PARTE MITCHELL, 177 S.W. 953.

In reply to your second inquiry, it is our opinion that Section 28 of Article 1 of the Constitution of Texas would not have any application to complaints, prosecutions, and convictions for violations of any provision of the Sanitary Code of Texas (Art. 4477, R.C.S., 1925) under Article 782, Vernon's Annotated Civil Statutes.

Rule 7 of the Sanitary Code enacted by Article 4477, Revised Civil Statutes, 1925, reads as follows:

"Health authority shall placard all houses where contagious diseases exist.- Upon notice that smallpox, diphtheria, scarlet fever, or other quarantinable disease exists within his jurisdiction, it shall be the duty of the local health authority to have the house in which such disease prevails placarded by placing a yellow flag or card not less than eight inches wide and twelve inches long with the words 'contagious disease' and the quarantine regulations printed thereon in a conspicuous place on said house." (Underscoring ours).

With respect to your third question, Rule 7 of the Sanitary Code of Article 4477, Revised Civil Statutes, 1925, provides that the house quarantined for a contagious disease be placarded with "a yellow flag or card not less than eight inches wide and twelve inches long with the words 'contagious disease' and the quarantine regulations printed thereon in a conspicuous place on said house." A "white card" would be an express violation of the plain and unambiguous language of the rule which calls for a yellow flag or card. The words "these premises are hereby placed under quarantine in accordance with and subject to the provisions of the Sanitary Code of the state of Texas. Penalty provided by law. By order of county health officer" are satisfactory with the exception of the fact that they do not meet the requirement

of the statute that "the quarantine regulations" be
"printed thereon".

This department is not in a position to advise
you explicitly as to what the "quarantine regulations"
should be. Rule 5 of the Sanitary Code sets forth the
"rules to quarantine and disinfection" and these rules,
which distinguish between "absolute" and "modified"
quarantine, should be followed in drafting "quarantine
regulations" to be printed on the quarantine flag or
placard.

Rule 5 of Article 4477, supra, reads as follows:

"Rules to quarantine and disinfection.-
The following rules of instruction for the reg-
ulation of quarantine, isolation and disinfec-
tion in the several contagious diseases, herein-
before mentioned, are to be observed by all
boards of health, health officers, physicians,
school superintendents and trustees, and others.
All health authorities of counties, cities, and
towns in this State are hereby directed and au-
thorized to establish local quarantine, hold in
detention, maintain isolation and practice dis-
infection as hereinafter provided for, of all
such infected persons, vehicles or premises
which are infected or are suspected of being in-
fected with any of the above named diseases when-
ever found.

"(a) Absolute quarantine includes, first,
absolute prohibition of entrance to or exit from
the building or conveyance except by officers or
attendants authorized by the health authorities,
and the placing of guards if necessary to enforce
this prohibition; second, the posting of a warn-
ing placard stating 'contagious disease,' in a
conspicuous place or places on the outside of
the building or conveyance; third, the prohibi-
tion of the passing out of any object or material
from the quarantined house or conveyance; fourth,
provision for conveying the necessaries of life
under careful restrictions to those in quaran-
tine.

"(b) Modified quarantine includes prohibition of entrance and exit, and in absolute quarantine except against certain members of the family authorized by the health authorities to pass in and out under certain definite restrictions; the placing of a placard as before; isolation of patient and attendant; prohibition of the carrying out of any object or material unless the same shall have been thoroughly disinfected.

"(c) Absolute isolation includes, first, the confinement of the patient and attendants to one apartment or suite of apartments, to which none but authorized officers or attendants shall have admission; second, screening of room and entire house if necessary with not less than 16-mesh wire gauze; third, the prohibition of passing out of the sick room of any object or material until the same has been thoroughly disinfected; fourth, protection of the air of the house by hanging a sheet, kept constantly moist with a disinfectant solution, over the doorway of the patient's room or rooms and reaching from the top of the door; fifth, if in the opinion of the local health authority the patient can not be treated, with reasonable safety to the public, at home, the removal of the patient and exposures to a contagious disease hospital or pest house.

"(d) Modified isolation includes the confinement of the patient and attendants to one room or suite of rooms, to which none but authorized officers or attendants shall have admission, but allowing the attendants to pass out of the room after disinfection of person and complete change of clothing; screening as above mentioned; the prohibition of passing any object or material out of the sick room until it has been disinfected; protection of the doorway as before.

"(e) Special isolation includes, first, prohibition of patient from attending any place

of public assemblage; second, the providing
of separate eating utensils for the patient;
third, prohibition of sleeping with others,
or using the same towels or napkins.

"(f) By complete disinfection is meant dis-
infection during illness, under direction of
attending physician, of patient's body, of all
excretions or discharges of patient and of all
articles of clothing and utensils used by pa-
tient, and after recovery, death or removal,
the disinfection of walls, woodwork, furniture,
bedding, etc.

"(g) By partial disinfection is meant dis-
infection of discharges or excretions of patients
and their clothing and the room or rooms occu-
pied by the patient during illness." (Under-
scoring ours).

As worded, your question four is not exactly
clear to our mind, but we advise that subdivision (a) of
Rule 5 defines "absolute quarantine" where the members
of the family are barred from entrance to or exit from
the building or conveyance as well as all other persons
by the health authorities, while subdivision (b) of Rule
5 defines "Modified quarantine" distinguishable from
"Absolute quarantine" in that certain members of the fam-
ily designated by the health authorities have the author-
ity to pass in and out of the house under certain defi-
nite restrictions within the power of the health author-
ities.

In answer to your question as we interpret it,
you are advised that the health authorities by establish-
ing an "Absolute quarantine" may prohibit all members of
the family from entrance to or exit from the building or
conveyance, whereas if a "Modified quarantine" is estab-
lished certain members of the family must be authorized
by the health authorities to pass in and out under cer-
tain definite restrictions. In every instance the health
authorities must declare the quarantine either "Absolute"
or "Modified".

Article 4460, Revised Civil Statutes, 1925, pro-
vides:

"Whenever the commissioners court of any
county has reason to believe that they are
threatened at any point within or without the
county limits with the introduction or dissem-
ination of a dangerous, contagious or infecti-
ous disease that can and should be guarded
against by quarantine they may direct their
county health officer to declare and maintain
said quarantine against any and all such danger-
ous diseases; to establish, maintain and supply
stations or camps for those held in quarantine;
to provide hospitals, tents or pest houses for
those sick of contagious and infectious disease;
to furnish provisions, medicine and all other
things absolutely essential for the comfort of
the well and the convalescence of the sick.
The county physician shall keep an itemized ac-
count of all lawful expenses incurred by local
quarantine, and his county shall assume and pay
them as other claims against the county are paid.
Chartered cities and towns are embraced within
the purview of this article, and the mere fact
of incorporation does not exclude them from the
protection against epidemic diseases given by
the commissioners court to other parts of their
respective counties. The medical officers of
chartered cities and towns may perform the duties
granted or commanded in their several charters,
but must be amenable and obedient to rules pre-
scribed by the State Board of Health. This ar-
ticle, however, must not be construed as prohib-
iting any incorporated town or city from declar-
ing, maintaining and paying for local quarantine."

Answering your fifth inquiry, it is our opinion
that Article 4460, Revised Civil Statutes, 1925, provides
that the county shall furnish medical attention, provi-
sions, medicine, and all other things absolutely essen-
tial for the comfort of the well and the convalescence
of the sick whenever the commissioners' court of the coun-
ty orders the health authorities to declare and maintain
a quarantine, whether it applies to a single house of
the entire county. It is entirely within the discretion
and judgment of the county commissioners' court as to

whether or not the county quarantine in respect to a single residence or many be established, and the expense connected therewith be assumed. The quarantine is at county expense only when the commissioners' court acts officially in respect to its establishment.

KING COUNTY vs. MITCHELL, 71 S.W. 610

In this case plaintiff, a rancher and his men, were placed under a strict quarantine by the duly authorized and constituted authority of King County, acting through the County Commissioners' Court of King County, by an order duly entered of record in the minutes of the commissioners' court of King County, quarantining said King County against an infectious disease, in accordance with the terms and provisions of Article 4340, Sayle's Annotated Civil Statutes, which is now Article 4460, Revised Civil Statutes, 1925.

Quoting from the opinion of the court:

" * * * We think a proper interpretation of this statute would require that a county whose commissioners' court has determined that they are threatened with the introduction or dissemination of a dangerous, contagious, or infectious disease, that can and should be guarded against by quarantine, and has directed the county physician to declare and maintain such quarantine, should furnish to those thus detained such provisions, medicines, and other things as are absolutely essential to their comfort and convalescense, and is legally liable therefor. We cannot hold that it is optional with a county to assume the duty of supplying these things. Nor can we assent to the contention of appellant that the county would be relieved of this duty because of the fact that there was no county physician to keep the itemized account of the expenses incident to the quarantine after the resignation of Dr. Hannah. The beneficent purpose of the statute was to supply to those detained in quarantine such things as were absolutely essential to their comfort and convalescence, and the duty of the county physician in the

particular of keeping an itemized account of expenditures is, at host, only ministerial in its nature, and the liability of the county not made to depend upon his compliance. If such were the case, the county could in the most meritorious cases avoid all liability by refusing to appoint such auditing officer. Further, it was the duty of the county judge of appellant county to appoint another physician upon the resignation of Dr. Hannah."

" * * * The county made the order directing a quarantine, appointed a county physician, who established such quarantine, placing guards, etc., about the camp of appellant and his men, knew of the resignation of the county physician, and continued thereafter to maintain such quarantine, without providing another, and without in any manner whatever providing for the wants and necessities of those thus affected by the order, and must, under the circumstances alleged, be held to have consented to the appellant's supplying such things as it was legally liable for, but which it had made no arrangements to supply."

As for your last question, we deem it inadvisable to answer it at this time because of its general nature, but wish to advise that if you have any further specific questions concerning the powers of local health officers in the enforcement of quarantine laws we shall be glad to render our opinion in respect to same.

Trusting that we have fully answered the first five questions propounded in your letter of request, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Dick Stout
Assistant

DS:ob

APPROVED NOV 1, 1939

ATTORNEY GENERAL OF

APPROVI
OPINION
COMMITT